■ In the Matter of PETER BLESSINGER et al., Appellants, v JUAN U. ORTIZ, as Personnel Director of the City of New York, et al., Respondents. — Order and judgment (one paper) of the Supreme Court, New York County (Arnold G. Fraiman, J.), entered on October 18, 1983, which granted petitioners' application to the extent of directing that respondents accord credit for alternate answer "C" of question 8 of the technical knowledge portion of examination 1613 (lieutenant, New York City Police Department) and that question 11 thereof be deleted and which denied the application in all other respects, is modified, on the law, to the extent of directing that respondents provide credit for alternate answers "B" of question 22, "D" of question 31, "C" of question 36, "A" of question 37 if the answer given to question 36 is "C", "B" of question 69, that question 63 of the examination be deleted, and otherwise affirmed, without costs or disbursements. ¶ Petitioners, who are sergeants in the New York City Police Department, seek credit for answers to certain questions contained in the promotional examination to lieutenant. These answers are not the responses deemed to be the most appropriate by respondents (the so-called "key" answers) but are alleged by petitioners to be as good as, or better than, the key answers designated by respondents. According to the Court of Appeals in *Matter of Acosta v Lang* (13 NY2d 1079, 1081), petitioners need not demonstrate the absence of a reasonable basis for the key answer, "but merely that the answer given by the candidate on the test is better or at least as good as the key answer. Where there are two equally acceptable answers to a question, the selection of one as the correct answer must be deemed to be the result of an arbitrary decision". Applying this standard, we have examined the disputed questions and find the following: ¶ Question 22: The Patrol Guide requires that a suspended officer surrender all department property, report every Monday, Wednesday and Friday in person to the resident precinct and turn in firearms. The key answer "C" is no less incomplete than the suggested alternative "B". Therefore, answer "B" meets the "as good as" test and is an acceptable choice. ¶ Question 31: The Patrol Guide states that members of the service are mandated to report to the station house of the precinct of the occurrence of the confrontation if the validity of credentials is questionable or either member is dissatisfied with the handling of, or results of, the contact. To take the action proposed by the key answer necessitates an assumption which is not, in fact, indicated by the fact pattern — that is, that O'Keefe is indeed an officer and there is a problem regarding his credentials and/or duty status.

Unless there is such a problem, or either O'Keefe or Police Officer Wilson were dissatisfied with their interaction, there would be no reason for them to report to the station house. Consequently, answer "D" is at least as good as "B", if not preferable. ¶ Question 36: The Patrol Guide relates that upon coming into possession of found property, the officer should prepare a property clerk's invoice and give the finder a copy thereof. The next step is to make an appropriate entry in the activity log, followed by the preparation of a report of unclaimed property. Answer "C", entering the property in a property index is, of necessity, an act subsequent to the preparation of the invoice and is no less a part of the required procedure than is the key answer, report of unclaimed property. Therefore, either answer is equally acceptable. ¶ Question 37: According to the Patrol Guide, the stolen property inquiry section (answer "D") would receive the original report of unclaimed property, so that if the candidate selected key answer "A" on question No. 36, the correct answer on No. 37 is "D". However, if the candidate chose "C" in question No. 36, the correct answer in No. 37 would be "A" (property clerk). ¶ Question 69: Since the fact pattern described in this question states that aid has been refused by the purportedly injured person, Lt. Sepanski should advise a friend or another worker at the site in the event that the victim suffers a delayed reaction to the accident. The Patrol Guide clearly lists as one of the procedures to be followed that the member of the service obtain the name and address of a relative or friend for notification. Accordingly answer "B" is as good as the key answer. ¶ Question 63: Although the key answer may technically comply with CPL 140.50, it is actually a less desirable option than either "A" or "C". Since the CPL clearly authorizes a police officer to make a warrantless arrest of an individual who has committed a felony in his presence (regardless of where the felonious conduct is observed), the key answer would advise the officer to take no action whatever in connection with a crime which he has just viewed. This does not seem to be a particularly acceptable alternative. Considering the apparent ambiguity and confusion inherent in the various alternative answers, the entire question should be deleted. ¶ We have examined petitioners' other objections and find them to be without merit. Concur — Murphy, P. J., Sullivan, Bloom, Fein and Milonas, JJ.